HENRY D. STONE *vs.* WILLIAM DICKINSON.

If several different creditors, acting separately, without concert, and without knowing that they were employing a common agent, have wrongfully caused their debtor to be arrested on their several writs, by the same officer, who served the writs simultaneously, and by virtue thereof committed the debtor to jail, where he was confined upon all of them at the same time, they are to be regarded as joint trespassers; and full satisfaction received by the debtor from one of them is a bar to an action by him against the others.

TORT to recover damages for false imprisonment.

At the trial in this court, before *Merrick,* J., it appeared that on the 7th of June 1858 the plaintiff was arrested by the same officer, on nine different writs in favor of different creditors, one of which was in favor of the defendant, which were all served at the same time by arresting the plaintiff and committing him to jail, where he was held in confinement upon them all until the 10th of February 1860, at which time he obtained his discharge on *habeas corpus,* on account of defects in the affidavits upon the writs.  *Stone* v. *Carter,* 13 Gray, 575.  The defendant offered to prove that the plaintiffs in several of the said actions had, since the date of the discharge of the plaintiff from jail, given up to him their notes upon which their suits were brought, and in consideration thereof the plaintiff discharged them " from all claim and demand for false imprisonment, by reason of the arrest of June 7th 1858," for which suits were pending against them, respectively.   The judge excluded the evidence.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*E. B. Stoddard & T. L. Nelson,* for the defendant.

*H. D. Stone, pro se.*

3*

BIGELOW, C. J. Several questions were raised at the trial of this case, upon which it seems to be unnecessary to express an opinion, inasmuch as we are satisfied that, on the facts offered to be proved, the defendant established a good defence to the action, and that the jury should have been instructed accordingly. There can be no doubt of the rule of law, that co-trespassers are jointly as well as severally liable for the damages occasioned by their wrongful acts ; and, as a consequence of this, that a release to one joint trespasser, or satisfaction from him for the injury, discharges all. *Brown* v. *Cambridge*, 3 Allen, 474, and cases cited. This principle is applicable to the case at bar. In the opinion of the court, the several persons on whose writs and by whose order the plaintiff was committed to jail, and held in confinement from June 1858 to February 1860, must be regarded in law as co-trespassers. Evidence was offered at the trial to prove that he had received satisfaction from some of them for his alleged wrong, and had given to them in writing a discharge for the damages he had suffered by reason of his arrest and false imprisonment. This satisfaction and discharge in legal effect operate as a release of the present cause of action against the defendant.

It cannot be denied that the parties who were plaintiffs in the original actions, in suing out their writs against the present plaintiff, and causing him to be arrested and imprisoned, acted separately and independently of each other, and without any apparent concert among themselves. As a matter of first impression, it might seem that the legal inference from this fact is, that the plaintiff might hold each of them liable for his tortious act, but that they could not be regarded as co-trespassers, in the absence of proof of any intention to act together, or of knowledge that they were engaged in a common enterprise or undertaking. But a careful consideration of the nature of the action, and of the injury done to the plaintiff for which he seeks redress in damages, will disclose the fallacy of this view of the case. The plaintiff alleges in his declaration that he has been unlawfully arrested and imprisoned. This is the wrong which constitutes the gist of the action, and for which he is

entitled to an indemnity. But it is only one wrong, for which in law he can receive but one compensation. He has not in fact suffered nine separate arrests, or undergone nine separate terms of imprisonment. The writs against him were all served simultaneously, by the same officer, acting for all the creditors, and the confinement was enforced by the jailer on all the processes contemporaneously, during the entire period of his imprisonment. The alleged trespasses on the person of the plaintiff were, therefore, simultaneous and contemporaneous acts, committed on him by the same person acting at the same time for each and all of the plaintiffs in the nine writs upon which he was arrested and imprisoned. It is, then, the common case of a wrongful and unlawful act, committed by a common agent acting for several and distinct principals.

It does not in any way change or affect the injury done to the plaintiff, or enhance in any degree the damages which he has suffered, that the immediate trespassers, by whom the tortious act was done, were the agents of several different plaintiffs, who, without preconcert, had sued out separate writs against him. The measure of his indemnity cannot be made to depend on the number of principals, who employed the officers to arrest and imprison him. We know of no rule of law by which a single act of trespass, committed by an agent, can be multiplied by the number of principals who procured it to be done, so as to entitle the party injured to a compensation graduated, not according to the damages actually sustained, but by the number of persons through whose instrumentality the injury was inflicted. The error of the plaintiff consists in supposing that the several parties who sued out writs against him, and caused him to be arrested and imprisoned, cannot be regarded as co-trespassers, because it does not appear that they acted in concert, or knowingly employed a common agent. Such preconcert or knowledge is not essential to the commission of a joint trespass. It is the fact that they all united in the wrongful act, or set on foot or put in motion the agency by which it was committed, that renders them jointly liable to the person injured. Whether the act was done by the procurement of one person or of

many, and, if by many, whether they acted with à common pur-
pose and design in which they all shared, or from separate and
distinct motives, and without any knowledge of the intentions
of each other, the nature of the injury is not in any degree
changed, or the damages increased which the party injured has a
right to recover. He may, it is true, have a good cause of action
against several persons for the same wrongful act, and a right
to recover damages against each and all therefor, with a privi-
lege of electing to take his satisfaction *de melioribus damnis.*
But there is no rule of law by which he can claim to convert a
joint into a several trespass, or to recover more than one satis-
faction for his damages, when it appears that he has suffered
the consequences of a single tortious act only. Take an illus-
tration. Suppose that several persons have a grudge or spite
against the same individual, but that neither of them is aware
of the existence of this feeling in the others ; and that each of
them, for the purpose of gratifying his malice, without concert
or coöperation with any one, and in ignorance of a similar in-
tent on the part of others, employs the same person — a hired
pugilist or bully — to inflict on the common object of their ill
will a severe personal castigation. In such a case, no one
would doubt that all the persons who incited to the commission
of the assault and battery would be regarded as co-trespassers.
They, each and all, would be responsible for procuring the act
to be done. They would be severally as well as jointly liable
to an action in favor of the party injured. But no one would
contend that he could recover satisfaction from each of the per-
sons liable to an action. When the damages suffered by him
had been once paid by any one of those who procured the com-
mission of the trespass, he could not claim to recover them
again from each of the others. The law will not permit a party
to receive anything more than a compensation for an injury.
Where there has been only one wrongful act, there can be but
one full and complete indemnity. When that is obtained, the
party injured has exhausted his remedy. Another illustration,
more analogous to the case at bar, will serve to show the
soundness of this conclusion. If, instead of the arrest and

Stone *v.* Dickinson.

imprisonment of which the plaintiff complains, the nine writs against him had been served simultaneously by the same officer, by making an attachment of personal property belonging to him — his horse, for example — in such case it could not be doubted, that if, for any reason, the attachments were irregular and void, the plaintiff would be entitled to recover and to receive from one or all of the parties by whose order the attachments were made the full value of his horse. But it is equally clear that he could not rightfully claim to receive this sum in damages from each of them, or nine times the value of the animal. And yet such would be the result, if the attaching creditors are not to be regarded as co-trespassers. Nor is this the only absurd result which would follow from such a doctrine. If each attachment or each arrest and imprisonment on the several writs is to be deemed as a distinct trespass, for which the creditors are separately and not jointly liable in like manner as if made on one writ only, without any reference to those which were served simultaneously, we can see no reason why the officer might not be held liable to pay to the plaintiff damages as many times as there were writs served by him. He certainly must be regarded as a joint trespasser with each creditor whose writ he served ; and if the service of each writ constituted a distinct trespass, for which the party injured might receive separate damages from each creditor, then the officer would also be subject to a like liability.

These views have led us to the conclusion that the evidence offered at the trial by the defendant to show that the plaintiff had received full satisfaction for the arrest and false imprisonment to which he had been subjected, and for which he claimed damages in this action, from some of his creditors by whose order he was committed to jail, ought to have been admitted, an that the jury should thereupon have been instructed that th plaintiff could not maintain this action. *Exceptions sustained.*